IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL J. HELLER,

      Petitioner,                      No. CIV S-05-2518 LKK EFB P

      vs.

K. POWERS-MENDOZA,

      Respondent.                   FINDINGS AND RECOMMENDATIONS

      Petitioner is a state prisoner with counsel seeking a writ of habeas corpus. *See* 28 U.S.C. § 2254. The matter is before the court on respondent's motion to dismiss.

      Petitioner was convicted of second degree murder, possession of marijuana and possession of cocaine on June 3, 1983. In his application, petitioner claims that the procedures used to find him unsuitable for parole violated due process. He alleges that on January 31, 2005, the Board of Prison Terms ("Board") found him suitable for parole, but on June 22, 2005, the governor reversed the decision based on both an erroneous understanding of petitioner's conviction and on political considerations. He also claims that the governor's decision to reverse the parole board's determination violates the *Ex Post Facto* Clause, alleging that the law authorizing the governor's review was passed after he committed his crime and operates to lengthen his sentence. Respondent contends that petitioner has no federally recognized liberty

interest in parole and, therefore, has not alleged that his custody violates the Constitution, laws or treaties of the United States. Respondent contends that the *Ex Post Facto* Claim fails as a matter of law based on the Ninth Circuit's decision in *Johnson v. Gomez*, 92 F.3d 964, 968 (9th Cir. 1996). For the reasons explained below, the court finds that respondent's motion must be denied in part, and granted in part.

**I.    Facts**

Petitioner's 1983 conviction resulted from conduct occurring in 1981. At the time, the Board was the sole decision-maker with respect to whether prisoners were suitable for parole. *Johnson*, 92 F.3d at 965. While the dates are not clear, petitioner several times was found not suitable for parole. As the result of a successful 1988 ballot initiative, the California legislature in 1994 passed a statute giving the governor authority to review parole suitability determinations for prisoners convicted of first and second degree murder. *Id.*; Cal. Pen. Code § 3041.2. Under the 1994 provision, the governor may affirm, modify, or reverse the Board's decision based on the same factors and the same record which the Board must consider. *In re Scott*, 34 Cal.Rptr.3d 905, 915 (Cal. App. 2005).

On January 31, 2005, a panel of the Board of Prison Terms ("Board") found petitioner suitable for release to parole. On June 22, 2005, the governor reversed that finding. As stated, the petitioner contends that this reversal violated his due process rights.

**II.   Due Process Claim**

Respondent asserts that petitioner has no federally cognizable interest in parole. A federal court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986) (federal habeas relief available only where "the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in state courts.").

1    Respondent's argument that there is no federally protected liberty interest in parole has been
2 specifically rejected by the Ninth Circuit. It is established in this circuit that California prisoners
3 have a federally protected liberty interest in release to parole. *Sass v. California Board of Prison*
4 *Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006). Therefore, the procedures utilized in deciding
5 suitability must be adequate to protect this interest, *Kentucky v. Department of Corrections*, 490
6 U.S. 452, 459 (1989), and there must be "some evidence" to support the decision to deny parole.
7 *See McQuillon v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). Under the parole procedures, when
8 the governor reverses the Board's decision to release a prisoner on parole and makes his own finding
9 of unsuitability, the governor must consider the same factors and the same record that the Board was
10 required to consider. *Scott*, 34 Cal.Rptr.3d at 915. Those factors are enumerated in California's
11 administrative code, and are designed to guide the decision-makers in a determination of whether
12 the prisoner would pose such a risk to public safety that he should not be released. *See* Cal. Pen.
13 Code § 3041(b); Cal. Code Regs. tit. 15, § 2282(a). The governor also may consider only facts that
14 were in the record before the Board. *See In re Arafiles,* 8 Cal.Rptr.2d 492, 497 (Cal. App. 1992).
15 Petitioner alleges that on January 31, 2005, the Board found him suitable for parole, but on June 22,
16 2005, the governor reversed the decision based on an erroneous understanding of petitioner's
17 conviction and on political considerations. Petition at 3, 5-7. If true, such bases for reversal would
18 appear to be unrelated to the public safety and may establish that the governor's decision was not
19 supported by "some evidence" under California's statutory criteria for denying parole. Therefore,
20 the petition is adequate to state a cognizable claim for relief.

21 **III.    Ex Post Facto Claim**

22    Respondent's *ex post facto* argument presents a more complicated question. Neither party
23 disputes that petitioner committed his crime before the California Legislature gave the governor
24 statutory discretion to review parole suitability findings. The only question is whether the statute
25 operates in a manner that violates the *Ex Post Facto* Clause. Respondent, arguing that petitioner's
26 allegations raise no claim under the *Ex Post Facto* Clause, relies on *Johnson v. Gomez*, 92 F.3d 964,

3

968 (9th Cir. 1996). In that case, the Ninth Circuit held that the statute in question here did not violate the *ex post facto* clause with respect to a prisoner who had not been found suitable for parole before the law was passed. *Johnson*, 92 F.3d at 967. Petitioner contends that the United States Supreme Court's decision in *Garner v. Jones*, 529 U.S. 244, 250 (2000), "so undermines the decision in *Johnson* that this Court must analyze the ex post facto claim anew." Opp'n at 28. Resolution of this dispute requires close examination of these cases.

The *Ex Post Facto* Clause is a limitation on legislative power that forbids passage and application of laws that retroactively either alter the definition of crimes or increase the punishment for criminal acts. *Garner v. Jones*, 529 U.S. 244, 250 (2000); *Calif. Dept. of Corr. v. Morales*, 514 U.S. 499, 504 (1995); *Marks v. United States*, 430 U.S. 188, 191 (1977); *Johnson v. Gomez*, 92 F.3d 964, 968 (9th Cir. 1996). In *Morales*, the Court considered a California statute lengthening the intervals between subsequent[1] parole suitability hearings for prisoners convicted of more than one homicide. *Morales*, 514 U.S. at 503. The statute did not change the statutory punishment, the standards for determining suitability for parole, or the "basic structure of California's parole law." *Id.* at 507. Nor did it prohibit requests for early consideration for parole based on a change in circumstances. *Id.* at 512-13. Furthermore, the Board of Prison Terms represented that its practice was to review all such requests for merit. *Id.* Therefore, nothing in the record suggested that, despite the statute, a prisoner might arbitrarily be denied an expedited hearing because of the change. *Id.* Given these facts, retroactive application of the law did not create "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 514.

Not long after the Supreme Court decided *Morales*, the Ninth Circuit Court of Appeals considered its application in an *ex post facto* challenge to the same statute at issue here. *Johnson*, 92 F.3d at 965. In *Johnson*, petitioner was found suitable for parole under the new law, but the governor reversed the decision. *Id.* at 965. The court found that there was no risk that petitioner's

---

[1] Subsequent parole suitability hearings are the periodic hearings after an initial hearing. *See* Cal. Pen. Code § 3041.5 (West 2000).

4

punishment actually was increased by the change because the law was facially neutral and merely placed final decision-making power in the hands of the governor. *Id*. at 967. Since petitioner had not been granted parole under the old law, whether the new law increased his sentence was speculative. *Id.* Therefore, the statute did not violate the *Ex Post Facto* Clause.

Five years after the decision in *Morales*, the United States Supreme Court considered a Georgia statute that lengthened the time between parole suitability hearings. *Garner*, 529 U.S. at 247. The law gave the Parole Board discretion to set subsequent parole consideration hearings any time from three to eight years from a denial. *Garner*, 529 U.S. at 254. However, the new law permitted expedited parole consideration upon a showing of a change of circumstances, or if the Parole Board received new information warranting earlier review, thereby enabling the Parole Board to "set reconsideration dates according to the likelihood that a review will result in meaningful considerations as to whether an inmate is suitable for release." *Garner*, 529 U.S. at 254. Crucial to the Court's analysis was the principle that administrative agencies are presumed to exercise their discretion properly. *Id*. Thus, given the statute's facial neutrality, the Court found that the discretion vested in the Parole Board did not necessarily create a significant risk of longer incarceration than expected at the time the offense. *Id*. Unlike the petitioner in *Morales*, the prisoner in *Garner* alleged that the danger that the Parole Board would not, or could not, properly exercise its discretion created a significant risk that longer sentences would result from the new law. *Id.* Addressing this allegation, the Court held that,

> [w]hen the rule does not by its own terms show a significant risk [of increased punishment], the [prisoner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion that its retroactive application will result in a longer period of incarceration than under the earlier rule.

*Garner*, 529 U.S. at 523-24. In noting this distinction between facial and as applied challenges to the constitutionality of a statute, the Court found that the record was not sufficiently developed to determine whether the prisoner had made the required showing. It noted that such a showing could be made by evidence of the Parole Board's internal policy statements and actual practices sufficient

5

to overcome the presumption that "the Board follows its statutory commands and internal policies in fulfilling its obligations." *Id.* at 256-27.

Having reviewed *Morales*, *Johnson*, *Garner*, there are two crucial points to be made as they relate to this petition, in which petitioner appears to challenge Cal. Pen. Code § 3041.2 as it was applied to him. First, while both *Johnson* and *Garner* involved facially neutral laws, the prisoner in *Garner* argued that the statute was unconstitutional "as applied." The Supreme Court held that to prevail on an as applied challenge to a facially neutral law, a prisoner must demonstrate that the way in which state officials exercise their discretion creates a significant risk of increased punishment. *Garner*, 529 U.S. at 256-57. The way to prove such an abuse is by reference to documentary evidence, such as informal policies and the like. The Court in *Garner* did not alter already existing *ex post facto* jurisprudence. It merely explained the essence of an as applied, as opposed to a facial, challenge to a statute. *Garner* did not, therefore, overrule *Johnson*.

Second, the statutes at issue in *Morales* and *Garner* are different from the one at issue here and in *Johnson*; the latter being one in the same. The former two allowed state officials to defer subsequent parole suitability hearings by up to three and eight years, respectively. *Morales*, 514 U.S. at 503; *Garner*, 529 U.S. at 247. The latter adds another decision-maker, i.e., the governor, to the equation. As stated above, the Board and the governor apply the same standard and consider the same facts. *Compare*, *Brown v. Palmateer*, 379 F.3d 1089, 1095 (9th Cir. 2004) (application of newly enacted facially neutral statute violated *ex post facto* clause by altering the standard by which it was determined whether to postpone a parole suitability hearing). Under *Garner*, an apparent disagreement between the governor and Board about how the facts measure up to the standard will not necessarily increase the punishment. There must be evidence about *how* the governor exercised his discretion. *Garner*, 529 U.S. at 523-24.

Turning to petitioner's argument, the above cases clearly show that his attempt to state a claim fails. He argues that he is entitled to relief because the Board did not abuse its discretion when it found him suitable for parole, and that respondent has not submitted evidence to "rebut" that

6

presumption. Opp'n at 30, 31-32. Petitioner provides no authority for this alleged presumption. It appears that he wants the court to infer that because the Board is presumed properly to have exercised its authority, the governor's disagreement with the Board must be an abuse of discretion. The argument fundamentally misstates California's parole procedure and the statutory authority of the governor to review the Board's decision. It also misunderstands petitioner's burden on this challenge. *Garner* places the burden on petitioner to submit evidence that the agency charged with exercising discretion abused that discretion. *Garner*, 529 U.S. at 523-24. In the context of the statute in question here, petitioner does not challenge the decision of the Board. He challenges the decision of the governor, who is the final decision-making authority in this instance. Therefore, petitioner must satisfy the rule in *Garner* with respect to the governor, and it is the governor who is presumed to exercise his discretion properly. Petitioner does not make any factual allegations in his *ex post facto* claim which, if proved, would support the conclusion that the governor's practical implementation of the rule resulted in a longer period of incarceration than under the former rule. Therefore, whether the law operated to lengthen petitioner's imprisonment is merely speculative. For these reasons, petitioner fails to state a claim that application of Cal. Pen. Code § 3041.2, either on its face or as applied to him in 2005, violates the *ex post facto* clause.

Accordingly, it is hereby RECOMMENDED that respondent's March 9, 2006, motion to dismiss be granted in part, and denied in part as follows:

1. That respondent's motion to dismiss the claim that the governor's decision finding petitioner unsuitable for parole violated due process be denied;

2. That respondent's motion to dismiss the claim that the governor's decision finding petitioner unsuitable for parole violates the *ex post facto* clause be granted; and

3. That respondent be directed to file and serve within 30 days a response to the remaining due process claim in petitioner's application, and to include with the answer any and all transcripts or other documents relevant to the determination of the issues presented in the application. *See* Rule 5, Fed. R. Governing § 2254 Cases; and

4. That petitioner be given 30 days to file a reply.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 7, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE