IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. HELLER,<br><br>          Petitioner,<br><br>vs.<br><br>K. POWERS-MENDOZA, Warden, Avenal State Prison,<br><br>          Respondent. | No. 2:05-cv-02518-JKS<br><br>MEMORANDUM DECISION |

Michael J. Heller, a state prisoner appearing *pro se*,[1] filed a Petition for Habeas Corpus under 28 U.S.C. § 2254. Heller is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Avenal State Prison. Respondent has answered, and Heller has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial in the San Bernardino County Superior Court, in August 2003 Heller was convicted of Murder in the Second Degree under California Penal Code § 187, Possession of Marijuana for Sale under California Penal Code § 11359, and Possession of Narcotics under California Penal Code § 11350(a). The trial court sentenced Heller to an indeterminate prison term of nineteen years to life. Heller does not challenge his conviction or sentence in this proceeding.

---

[1] Heller filed his Petition *pro se*. Subsequently, this Court appointed counsel to represent him in this proceeding.

In January 2005 the Board of Prison Terms ("Board") granted Heller parole. In June 2005 the Governor reversed the decision of the Board. After exhausting his state-court remedies, Heller timely filed his Petition for relief in this Court on December 8, 2005. On November 22, 2010, this Court, adopting in part and rejecting in part the Findings and Recommendations of the Magistrate Judge, granted Heller's Petition and ordered him released to parole status.[2] On June 29, 2011, the Court of Appeals for the Ninth Circuit reversed the judgment and remanded the case to this Court.[3]

The facts underlying Heller's conviction and the balance of the procedural background are well known to the parties and are set forth in detail in the Findings and Recommendations of the Magistrate Judge.[4] Consequently, they are not repeated herein except as necessary to understand this decision.

## II. GROUNDS PRESENTED/DEFENSES

In his Petition, Heller raised four grounds: (1) that the decision of the Governor was unsupported by "some evidence"; (2) the amendment to California Penal Code § 3041.2 conferring on the Governor veto powers over decisions of the Board violates the *Ex Post Facto* Clause; (3) the Governor's reversal violated Heller's right to a jury trial; and (4) § 3041.2 and the "some evidence" standard of review are unduly vague. Respondent has not asserted any affirmative defense.[5]

---

[2] Docket Nos. 46 (Order); 47 (Judgment).

[3] Docket No. 60.

[4] Docket No. 39.

[5] *See* Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[6] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412 (alteration added).

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

be "objectively unreasonable," not just "incorrect or erroneous."[10]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[11]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice

---

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[15]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[16] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[17] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[18]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal. If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[19]

---

[15] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[16] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . ").

[17] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[18] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[19] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

This is considered as the functional equivalent of the appeal process.[20]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[21]  This presumption applies to state-trial courts and appellate courts alike.[22]

## IV.  DISCUSSION

In granting the Petition this Court found that the decision of the Governor reversing the decision of the Board was not supported by some evidence (Petitioner's first ground).  In light of this finding, it was unnecessary to reach the other grounds raised in the Petition.[23]  The Ninth Circuit remanded the matter to this Court "for the purpose of addressing any other grounds raised in Heller's petition for a writ of habeas corpus not previously addressed by the district court."[24]  Thus, this Court must address Heller's second, third, and fourth grounds.

Initially, this Court notes that, although Heller raised these three grounds in his state court habeas petitions, no state court addressed those grounds.[25]  When there is no reasoned state-court

---

[20] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[21] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing § 2254(e)(1)).

[22] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[23] Docket No. 39.

[24] Docket No. 60, at 2.

[25] The San Bernardino County Superior Court denied his petition in an unreported, reasoned decision discussing only Heller's "some evidence" argument, and the California Court of Appeal, Fourth District, and the California Supreme Court summarily denied relief without

decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[26]  "The presumption may be overcome when there is reason to think that some other explanation for the state court's decision is more likely."[27]  Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state-court decision was objectively unreasonable.[28] In conducting an independent review of the record, this Court presumes that the relevant state-court decision rested on federal grounds,[29] giving that presumed decision the same deference as a reasoned decision.[30]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of

---

opinion or citation to authority.

[26] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

[27] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

[28] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

[29] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

[30] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[31]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[32]

Ground 2:  *Ex Post Facto* Clause

Heller argues that the 1988 amendment to California Penal Code § 3041.2 adding the provision granting the Governor veto power over decisions of the Board, which became effective after Heller's conviction, violates the *Ex Post Facto* Clause of the Constitution.  Prior to the time that the San Bernardino County Superior Court rendered its decision, the California Supreme Court had addressed and rejected the argument that § 3041.2 violated the *Ex Post Facto* Clause in *In re Rosenkrantz*.[33]  The San Bernardino Superior Court and the California Court of Appeal were bound by that decision,[34] and the California Supreme Court did not address the question.

In *Rosenkrantz*, the California Supreme Court, in rejecting an *ex post facto* challenge to the application of the 1988 amendment adding gubernatorial review to § 3041.2, held:

> Furthermore, article V, section 8(b), did not make any changes in the substantive standard that governs the determination of petitioner's suitability for parole; indeed, article V, section 8(b), explicitly provides that the Governor, in

---

[31] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (citation omitted). *But cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("Our standard of review is not controlled by *Delgado v. Lewis* . . . .  There, we held that where a state court provides no rationale for a decision, a habeas court does not apply de novo review, but instead determines whether the state decision was objectively unreasonable based on its independent reading of the record.  Here, however, the state court was not silent as to its reasoning . . . .  Therefore, we review de novo whether Lewis waived his right to conflict free counsel . . . .").

[32] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[33] 59 P.3d 174 (Cal. 2002).

[34] *See Auto Equity Sales v. Superior Court*, 369 P.2d 937, 939-40 (Cal. 1962).

8

reviewing the parole board's decision, is to apply *the same factors as the Board.* The only change effected by article V, section 8(b), is the institution of an additional level of discretionary review of the Board's decision granting or denying parole, resulting merely in a change in the identity of the entity or official within the executive branch that may make the ultimate decision on parole. Prior to the adoption of article V, section 8(b), the only reasonable expectation that an individual in petitioner's position would have had with regard to punishment was that he or she would receive a sentence of 15 years to life imprisonment and that, after serving the minimum term, he or she would be entitled to have a public official exercise discretion with regard to his or her suitability for parole under then existing standards. Such an individual in petitioner's position had no reasonable expectation regarding the identity of the person or persons who would exercise discretion in evaluating his or her suitability for parole, or that the person or persons who would make such a decision would not change over time. Accordingly, under the ordinary meaning of the controlling language in *Collins,* it appears clear that the application of the procedure set forth in article V, section 8(b), to an individual who committed a criminal offense prior to its enactment does not *increase the punishment* for such crime.[35]

In *Garner*, the Supreme Court made clear that retroactive changes to a state's parole laws may, in some instances, violate the *Ex Post Facto* Clause.[36] In order to establish an *ex post facto* violation based on a state's retroactive application of a parole statute, a prisoner must demonstrate that the new statute "creates a significant risk of prolonging [the prisoner's] incarceration."[37] A change in the law that does nothing more than alter the method of granting parole under identical substantive standards, however, does not implicate the *Ex Post Facto* Clause.[38] Likewise, the Supreme Court has found that there was no *ex post facto* violation where

---

[35] *Rosenkrantz*, 59 P.3d at 193.

[36] *Garner v. Jones*, 529 U.S. 244, 250 (2000) (citing *Lynce v. Mathis*, 519 U.S. 433, 445-46 (1997)).

[37] *Id*. at 251 (alteration added).

[38] *See Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 507-14 (1995) (holding that a change allowing the Board to increase the time between reviews did not violate the *Ex Post Facto* Clause); *Garner*, 529 U.S. at 250 (noting that the California law in question in *Morales* did not modify the statutory punishment imposed for any particular offense or alter the standards for

9

the new law allowed for higher court review of intermediate court decisions, even though the defendant would have been entitled to a final intermediate-court decision at the time he committed his crime.[39]

*Ex post facto* analysis of a facially neutral parole law requires a case-specific, fact-intensive analysis regarding the risk posed by the law to the particular prisoner challenging its application.[40] The Supreme Court has also noted that the possibility of immediate release is largely "theoretical" in that in many cases a prisoner's release date comes at least several years after a finding of suitability.[41]

In this case, it does not appear from the record that Heller was ever granted parole by the Board under the law as it existed prior to its 1988 amendment. The Ninth Circuit has rejected an *ex post facto* challenge to California Penal Code § 3041.2 "because the BPT's parole decision is not final until after the expiration of the thirty-day gubernatorial review period, [thus,] it cannot be said with certainty that the BPT would have granted [Heller] parole had it possessed the final

---

determining parole eligibility).

[39] *Mallett v. North Carolina*, 181 U.S. 589, 592- 97 (1901); *see Collins v. Youngblood*, 497 U.S. 37, 45 (1990) (discussing the differences between changes in procedures by which a criminal case is adjudicated, which is generally not subject to an *ex post facto* limitation, and changes in the substantive law of crimes); *Dobbert v. Florida*, 432 U.S. 282, 292-94 (1977) (holding that a change in state law that gave the trial court and the state's highest court, rather than the jury, the final say on whether the death penalty was to be imposed in a particular case, could be applied retroactively to a defendant who committed his offense prior to the enactment of the new provision, without violating the *Ex Post Facto* Clause).

[40] *See, e.g., Garner*, 529 U.S. at 255 ("[R]espondent must show that as applied to *his own* sentence the law created a significant risk of increasing his punishment." (emphasis added)).

[41] *Morales*, 514 U.S. at 513 (citing *In re Jackson*, 39 Cal.3d 464, 474 (1985)).

10

review authority."[42] Heller's reliance on the later Ninth Circuit decision in *Brown*[43] is misplaced. In *Brown*, the change held to constitute an *ex post facto* violation was a change to the standard to be applied, not the procedure to be followed.[44] Under § 3041.2, the Governor must apply the same substantive standards as applied by the Board. In *Johnson*, the Ninth Circuit noted that this characteristic could not differentiate the change in the law in § 3041.2 from the change in the law in *Mallett*. Contrary to Heller's contention, *Garner* did not undermine either the rationale or the holding in *Johnson*.[45]

In *Rosenkrantz*, the California Supreme Court considered, extensively analyzed, and applied *Mallett*, *Morales*, *Youngblood*, *Dobbert*, and *Garner* in reaching its decision.[46] In his Traverse, Heller urges this Court to determine that the *Rosenkrantz* majority erred in its interpretation and application of *Morales* and *Garner*; thus, he argues that this Court should accept the view of the two dissenting justices in *Rosenkrantz*.[47]

---

[42] *Johnson v. Gomez*, 92 F.3d 964, 967 (9th Cir. 1996) (alterations added).

[43] *Brown v Palmateer*, 379 F.3d 1089 (9th Cir. 2009).

[44] *Id.* at 1094-96.

[45] The California Supreme Court reached the same conclusion in *In re Rosenkrantz*, 59 P.3d 174, 196 (Cal. 2002).

[46] *Id*. at 194-99 (citations omitted).

[47] This Court notes that the Supreme Court denied *certiorari* in *Rosenkrantz*. *Rosenkrantz v. California*, 538 U.S. 980 (2003) (Mem). That denial, however, "imports no expression of opinion upon the merits of the case." *Teague v. Lane*, 489 U.S. 288, 296 (1989) (O'Connor, J., with Chief Justice and two Justices concurring, and three Justices concurring in part and concurring in the judgment) (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923) (Holmes, J.)).

In his Petition to this Court, Heller contends that empirical data proves that, as applied in general and to himself in particular, § 3041.2 results in a longer period of incarceration.[48] Thus, according to Heller, the amendment to § 3041.2, as applied to him, increased the risk of a longer period of incarceration thereby satisfying *Garner*.  The fatal flaw in Heller's argument is that, although in his Petition to this Court Heller presents some evidence in support of his position, in his petitions to the California courts Heller neither argued nor presented any factual support that, *as applied to him*, § 3041.2 resulted in a longer period of incarceration.

Under 28 U.S.C. § 2254(d)(1) review by this Court is limited to the record that was before the state court that adjudicated the claim on the merits.[49] "[T]he petitioner must . . . provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'"[50] "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."[51] "If the state-court decision 'identifies the correct governing legal principle' in effect at the time, a federal court must assess whether the

---

[48] Citing excerpts from the two dissenting justices in *Rosenkrantz*.

[49] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[50] *Davis v. Silva,* 511 F.3d 1005, 1009 (9th Cir. 2008) (first alteration added) (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir. 1958)).

[51] *Williams*, 529 U.S. at 437 (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.").

12

decision 'unreasonably applies that principle to the facts of the prisoner's case.'"⁵² As the Supreme Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."⁵³ Heller has failed to meet this standard.

Heller's argument that the Governor does not in fact apply the same standards in practice also fails. Whether or not the Governor's decision properly applies the standards of California law is strictly a question of California law, which is for the California courts to correct, not this Court in a federal habeas proceeding.⁵⁴ Heller's argument is akin to an abuse of discretion argument. Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,⁵⁵ the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief. Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.⁵⁶

---

⁵² *Pinholster*, 131 S. Ct. at 1399 (quoting *Williams*, 529 U.S. at 405).

⁵³ *Id.*

⁵⁴ *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

⁵⁵ *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc) ("A particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of discretion has the same effect.").

⁵⁶ *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing 28 U.S.C. § 2254(d)(1))).

In light of *Pinholster*, *Garner*, *Morales*, *Mallett*, *Youngblood*, and *Johnson*, this Court cannot say that the assumed decisions of the California courts in this case, which presumably relied on *Rosenkrantz*, were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state courts rendered their decisions or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[57]  Heller is not entitled to relief under his second ground.

Ground 3:  Violation of Right to a Jury Trial

Heller contends that the Governor's action effectively characterizes his crime as being first-degree murder when he was only convicted of second-degree murder.  Thus, Heller argues this violates his right to a jury trial.  Because the action of the Governor did not increase Heller's sentence beyond the statutory maximum of life imprisonment for second-degree murder, it did not violate the principles of *Apprendi*[58] and *Blakely*.[59]  Neither the Supreme Court nor the Ninth Circuit have ever held that the executive, in making parole determinations, could not consider factors beyond those specifically defined in the underlying conviction.  Accordingly, this Court cannot find that the assumed decisions of the California courts rejecting Heller's third ground

---

[57] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63,70-75 (2003) (explaining this standard).

[58] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

[59] *Blakely v. Washington*, 542 U.S. 296 (2004).  In *Blakely*, the Supreme Court expanded *Apprendi*, holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 303.

were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state courts rendered their decisions or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[60]  Heller is not entitled to relief under his third ground.

> Ground 4:  § 3041.2 and "Some Evidence" Rule Unconstitutionally Vague

Heller contends that § 3041.2 and the "some evidence" rule are so vague that they violate the Constitution.  The assumed decisions of the California courts rejecting this argument were neither contrary to, nor an unreasonable application of clearly established federal law because the standards of the regulation and the "some evidence" rule are not "too vague to provide any guidance . . . ."[61]  Furthermore, the "some evidence" standard is employed by the Supreme Court,[62] and clarity may be provided by judicial gloss.[63]  What constitutes "some evidence" in the

---

[60] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[61] *See Arave v. Creech*, 507 U.S. 463, 471 (1993) ("[The] federal court . . . must first determine whether the statutory language defining the circumstances itself is too vague to provide any guidance to the sentencer.  If so, then the federal court must attempt to determine whether the state courts have further defined the vague terms and, if they have done so, whether those definitions are constitutionally sufficient, *i.e.*, whether they provide some guidance to the sentencer." (citing *Walton v. Arizona*, 497 U.S. 639, 654 (1990)); *see also Hess v. Bd. of Parole and Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir. 2008) ("The Due Process Clause does not require the same precision in drafting parole release statutes as is required in the drafting of penal laws.").

[62] *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) ("We now hold that revocation of good time does not comport with the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record." (internal quotation marks and citations omitted)).

[63] *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 355-68 (1983); *Bouie v. City of Columbia*, 378 U.S. 347, 357-59 (1964); *Lanzetta v. New Jersey*, 306 U.S. 451, 455-57 (1939).

15

context of parole denial has been amply defined by both state and federal cases.[64] Heller is not entitled to relief under his fourth ground.

### Ground in Traverse: Bias

In his Traverse, Heller also contends that the State is biased against the granting of parole to "lifers," denies parole because of political motivation, and systemically and arbitrarily applies § 3041.2. Heller further contends that, because Respondent does not specifically address these contentions in its response, the State should be deemed to have conceded these issues. This Court disagrees. First, this Court notes that as part of his first ground, Heller simply contended that the Governor's action was arbitrary and politically motivated without any factual support. Nothing in his Petition addresses, directly or indirectly, bias or that the Governor systemically and arbitrarily applies § 3041.2. This Court does not ordinarily reach grounds raised for the first time in the Traverse. "The petition must: (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief requested . . . ."[65] Respondent did deny that the Governor's decision was politically motivated. There was nothing in the Petition for the Respondent to controvert in addition to the arguments advanced by the Respondent in response to the first ground, i.e., that the Governor's decision was supported by

---

[64] *See, e.g., Hill*, 472 U.S. at 455 ("Requiring a modicum of evidence to support a decision to revoke good time records will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens."); *Rosenkrantz*, 59 P.3d at 205 ("[r]equiring a modicum of evidence" (quoting *Hill*, 472 U.S. at 455)).

[65] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2011) (alteration added) (emphasis added); *see Mayle v. Felix*, 545 U.S. 644, 655-56 (2005) (discussing the import and effect of Rule 2(c)).

"some evidence." If supported by "some evidence," the necessarily logical conclusion is that the decision was neither arbitrary nor necessarily politically motivated .

It is axiomatic that a "fair trial in a fair tribunal is a basic requirement of due process," i.e., an absence of actual bias.[66] This principle applies equally to adjudicative administrative agencies as well.[67] Heller does not allege that the Board or the Governor are biased or prejudiced against him personally, but as a member of an identifiable class, i.e., those serving life terms, an equal protection argument.

As an equal protection question, Heller's argument also fails. That the Equal Protection Clause of the Fourteenth Amendment protects a person against being treated differently from others similarly situated is well settled.[68] That rule does not, however, bar all differences in treatment for those who may appear to be similarly situated. The general rule is that legislation is presumed to be valid provided that the difference is rationally related to a legitimate state interest.[69] Heller has not cited any case holding that "lifers" are a class protected by the Equal Protection Clause of the Fourteenth Amendment, and independent research by this Court has not found any such case. Nor has Heller advanced any argument that treating "lifers," whose crimes have been determined to be more serious than those crimes for which a lesser sentence is prescribed, is somehow arbitrary or capricious. Indeed, the California legislature in prescribing a

---

[66] *In re Murchison*, 349 U.S. 133, 136 (1955); *see Bracey v. Gramley*, 520 U.S. 899, 904-05 (1997) (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).

[67] *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973).

[68] *See, e.g., City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (2003) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

[69] *Id.* at 440.

more serve punishment has determined that those who commit certain crimes are to be treated differently from those who may have committed other less serious crimes. In short, to accept Heller's argument requires this Court to find that the California legislature, in prescribing an indeterminate term for second-degree murder, with the upper term being life, denied him equal protection. For this proposition, not only is there no authority, but it is well established that the punishment for crimes "as a general matter, is 'properly within the province of the legislatures, not courts.'"[70] Thus, Heller is not entitled to relief on the basis of the argument that the State of California is biased against "lifers."

## V.  CONCLUSION AND ORDER

Heller is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[71] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[72]

---

[70] *Hamelin v. Michigan*, 501 U.S. 957, 998 (1991) (Kennedy, J. concurring) (quoting *Rummell v. Estelle*, 445 U.S. 263, 275-76 (1980)); *see Gore v. United States*, 357 U.S. 386, 393 (1958) ("Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, . . . these are peculiarly questions of legislative policy." (citation omitted)).

[71] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[72] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

**IT IS FURTHER ORDERED THAT** the Request for Status Conference at **Docket. No. 62** is **DENIED** as moot.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 9, 2011.

                                               /s/ James K. Singleton, Jr.
                                               JAMES K. SINGLETON, JR.
                                               United States District Judge